Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 9391 | **DATE** | 10/12/2004 |
| **CASE TITLE** | Flemming vs. United Parcel Service | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court grants UPS's motion to dismiss (14-10 in part and denies it in part. Count 4 through 7 are dismissed; the motion is otherwise denied. UPS is directed to answer the remaining claims within fourteen days of this order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | OCT 1 3 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 21 |
| | Mail AO 450 form. | | IS docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | 2004 OCT 12 PM 5: 22 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

REGINALD FLEMMING, WILLFREDO )
VASQUEZ, PETER D. CARTER, DARRYL D. )
MCARTHUR, EDWARD BANEVICIUS, )
THOMAS BALLUFF, JOHN BAPTISTE, )
RICARDO BEATON, LARRY BORTKO, )
DALE CHOBAK, ROBERT DISTENFIELD, )
THOMAS PSIHOGIOS, and RICKY WHITE, )
)
)
Plaintiffs, )
)
vs. ) Case No. 03 C 9391
)
UNITED PARCEL SERVICE and )
INTERNATIONAL BROTHERHOOD )
OF TEAMSTERS LOCAL 705, )
)
Defendants. )

DOCKETED
OCT 13 2004

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiffs were truck drivers for United Parcel Service in the company's Metro Chicago district, and were represented by the International Brotherhood of Teamsters Union, Local 705. Between January and March 2002, each plaintiff was laid off by UPS. Plaintiffs Reginald Flemming, Peter Carter, Willfredo Vasquez, and Darryl McArthur have asserted claims of race discrimination, disparate impact, and hostile work environment against UPS. All of the plaintiffs have also sued UPS for breach of the company's collective bargaining agreement with Local 705 and have sued the Union for breach of its duty of fair representation. UPS has moved to dismiss all of the claims against it. For the reasons stated below, UPS' motion is granted in part and



denied in part.

## Facts

According to plaintiffs' amended complaint, the collective bargaining agreement between UPS and Local 705 that was in effect until October 1, 2002 gave laid off "feeder drivers" like the plaintiffs the option of bumping (replacing) feeder drivers working in other UPS districts. The bumping policy was based entirely on seniority. If a laid off driver exercised the bumping option, after thirty days in the new district he could bid for permanent placement in that district. The bidding policy was also based on seniority.

After they were laid off from the Metro Chicago district, plaintiffs Carter, Flemming, and McArthur, who are African-American, and Vasquez, who is Hispanic, tried to take advantage of the bumping policy to obtain new positions in either the Central or Northern Illinois districts. They claim, however, that UPS refused to allow them to bump less senior, Caucasian feeder drivers in other districts. Furthermore, they claim that UPS refused to allow them to bid for permanent placement in other districts. They argue that this constituted prohibited race and national origin discrimination and that UPS created a hostile work environment by advising white drivers that the plaintiffs were trying to bump them off their jobs.

In August 2002, UPS and Local 705 adopted a new collective bargaining agreement. Under the new agreement, laid-off drivers were no longer allowed to bump or to bid for permanent placement in other districts. All of the plaintiffs allege that Local 705 breached its duty of fair representation by, among other things, failing to timely pursue their grievances before the new displacement policy took effect. Vasquez, Carter, Flemming, and McArthur also allege that the new policy, though facially neutral, disproportionately impacted minorities. They allege

2

that most layoffs occur in metro districts, like Chicago, where the percentage of minority and female drivers is much higher than in non-metro districts. Plaintiffs also allege that the Chicago Metro district had drivers with much more seniority than the drivers in the surrounding districts of Northern and Central Illinois. Plaintiffs contend the new UPS policy allowed less senior, white feeder drivers to maintain their jobs while more senior, minority drivers were laid off.

## Discussion

In ruling on a motion to dismiss, the Court looks at the sufficiency of the complaint, not its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). A claim will be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1429 (7th Cir. 1996).

### 1. Counts 4 and 7: McArthur's claims

UPS argues that McArthur's race discrimination and hostile work environment claims in Counts 4 and 7 of the amended complaint should be dismissed as untimely because they were not filed within ninety days of McArthur's receipt of a right-to-sue letter. 42 U.S.C. § 2000e-5(f)(1). McArthur appears to concede that his claims were untimely but argues that he should be allowed to "piggy-back" onto the timely claims of Flemming, Vasquez, and Carter. Under the so-called single filing rule, a plaintiff who faced similar discriminatory treatment during a similar time period as a co-plaintiff, but missed the EEOC filing deadline, is allowed to piggy-back on the timely EEOC filing of the similarly affected co-plaintiff. *Anderson v. Montgomery Ward & Co.*, 852 F.2d 1008, 1014 (7th Cir. 1988); *see also, Gitlitz v. Compagnie Nationale Air France*, 129 F.3d 554, 557 (11th Cir. 1997).

3

UPS argues that McArthur's claims fall under an exception to the single filing rule that prohibits a claimant who has filed an EEOC complaint and received a right-to-sue letter from piggy-backing onto the timely filed claims of similarly situated claimants. *Gitlitz*, 129 F.3d at 558; *see also*, *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1223-24 (5th Cir. 1995); *Anderson v. Unisys Corp.*, 47 F.3d 302, 308-09 (8th Cir. 1995). The Seventh Circuit has not addressed this exception to the single filing rule. *See Brewton v. City of Harvey*, 285 F. Supp. 2d 1121, 1127 (N.D. Ill. 2003) ("There is little discussion in the Seventh Circuit of the single-filing rule, while other circuits have explored the issue more fully."); *Zuckerstein v. Argonne National Laboratory*, 663 F. Supp. 569, 573 (N.D. Ill. 1987). It has stated, however, that the single filing rule applies to plaintiffs who have neither filed a timely charge with the EEOC nor received a right-to-sue letter, which arguably implies that a plaintiff who does receive a right-to-sue letter may not enjoy the benefit of piggy-backing. *See Wakeen v. Hoffman House, Inc.*, 724 F.2d 1238, 1245 (7th Cir. 1983).

The Court believes that if faced with the issue, the Seventh Circuit would recognize the exception to the single filing rule recognized by the Fifth, Eighth, and Eleventh Circuits. McArthur received a right-to-sue letter which clearly advised him that if he wanted to file suit, he had to do so within ninety days. As a result, McArthur was on notice that the clock was ticking. He cannot now rely on other claimants who diligently followed the statutory time limits. Counts 4 and 7 are therefore dismissed.

2. *Counts 1 through 7: the 300 day limit*

Title VII requires that a charge of discrimination be filed within 300 days of the alleged discriminatory act. 42 U.S.C. § 2000e-5. UPS argues that Counts 1 through 7 are based on acts -

4

specifically, the layoffs - that occurred outside the 300 day period before the EEOC charges, and that those claims should be dismissed. The plaintiffs filed discrimination charges with the EEOC in July and August 2003. Flemming and Vasquez were laid off in February 2002, and Carter was laid off in March of that same year.

Plaintiffs admit that the layoffs and some of the other allegedly discriminatory acts listed in their complaint occurred outside the 300 day period, but they argue that they have alleged a course of conduct constituting a continuing violation of Title VII, including acts within the 300 day period, and thus may rely on acts outside that period as part of their claim.

Under the continuing violation doctrine, a claim that otherwise would be time-barred may go forward because it is linked with an act or acts that occurred within the 300 day period. *Miller v. American Family Mutual Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). In the present context, a plaintiff can show a continuing violation in one of three ways: (1) by showing that the employer's decision-making process occurred over time; (2) by showing that the employer has in place an express, openly espoused policy that is alleged to be discriminatory; or (3) by showing that an employer covertly follows a practice of discrimination over a period of time. *Croft v. Inflight Risk Management*, No. 01 C 1766, 2002 WL 226859, *2 (N.D. Ill. Feb. 14, 2002); *see Tinner v. United Ins. Co. of America*, 308 F.3d 697, 707 (7th Cir. 2002). In this case, it appears that plaintiffs rely on the third method. They allege that UPS has committed many discrete acts of discrimination, ranging from layoffs, to prohibiting them from bidding for permanent placement, to adopting a discriminatory policy, and that each of these acts were part of a long pattern of discrimination. *See* Pl. Resp. at 13. Because we are addressing a motion to dismiss, the Court must accept as true the allegations in plaintiffs' amended complaint. A liberal reading

of the amended complaint persuades the Court that its allegations support the application of the continuing violation doctrine.

3. ***Counts 5 and 6: hostile work environment claims***

UPS next argues that Flemming and Carter's hostile work environment claims in Counts 5 and 6 should be dismissed because they are beyond the scope of their EEOC charges. Even though the charges are not attached to the amended complaint, the Court may consider their contents on a motion to dismiss because they are referenced in the amended complaint.

Carter's EEOC charge states that:

> On or about March 2002, I was displaced from my position whereas less senior, non-Black drivers continued to work.
>
> I believe that I have been discriminated against on the basis of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

Mot. to Dismiss, Ex. C. Flemming provides slightly more information in his EEOC charge:

> In or around February 2002, I was laid off from my position, whereas similarly-situated, less senior, non-Black employees continued to work. These employees have continued to receive more favorable treatment with regard to Respondent's layoff and displacement rules.
>
> I believe that I have been discriminated against on the basis of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

*Id.*, Ex. A.

Generally, a plaintiff in a Title VII case cannot assert claims that were not included in his EEOC charge. *Cheek v. Western and Southern Insurance Co.*, 31 F.3d 497, 500 (7th Cir. 1994). This does not mean, however, that a plaintiff must include in his EEOC charge every fact necessary to support a hostile work environment claim. If there exists a "reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the

6

complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge," then the claim in the lawsuit should be allowed to go forward even if it was not expressly mentioned in the EEOC charge. *Id.*; *see Jenkins v. Blue Cross Mut. Hosp. Ins.*, 538 F.2d 164, 167 (7th Cir. 1976). The reasonableness standard established by the Seventh Circuit in *Cheek* and *Jenkins* is a liberal standard in recognition of the fact that EEOC charges are drafted by lay persons. *See, e.g., Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864 (7th Cir. 1985) (the *Jenkins* standard is a liberal one "in order to effectuate the remedial purposes of Title VII, which itself depends on lay persons, often unschooled, to enforce its provisions").

Even when read broadly, however, there is not a reasonable relationship between the allegations contained in Flemming and Carter's EEOC complaints and their claims that UPS created a hostile work environment. *See Cheek*, 31 F.3d at 500 (hostile work environment claims ordinarily are outside the scope of an administrative charge which alleges only other types of discrimination). In fact, their EEOC charges contain no language remotely suggesting that they endured a hostile environment, and these claims fail to meet the *Cheek/Jenkins* standard.

4.  *Counts 1 and 3: disparate impact claims*

UPS argues that the disparate impact claims made in Counts 1 and 3 by Flemming and Carter should also be dismissed for failing to meet the *Cheek/Jenkins* reasonable relation standard. Reading Flemming and Carter's EEOC charges broadly, this Court cannot say that their disparate impact claims lack a reasonable relationship to the charges. As this Court recently stated in the related case of *Peisker v. UPS*, No. 03 C 4593, 2003 WL 22595260, *2 (N.D. Ill. Nov. 10, 2003), "it is reasonable to expect that an EEOC investigation would investigate not just the particulars of how the plaintiffs were treated, but also whether UPS was following policies

7

that disproportionately impacted women and minorities in general." *See also Taylor v. Western and Southern Life Ins. Co.*, 966 F.2d 1188, 1195 (7th Cir. 1992) ("A single [EEOC] charge may launch a full scale inquiry into racial discrimination") (internal citations omitted).

### 5. *Count 8: section 301 claim*

Count 8 of the amended complaint charges UPS with violating the collective bargaining agreements (a "section 301" breach) during the period in which the alleged discriminatory acts took place. UPS argues that the section 301 claim must be dismissed because it was not filed within the applicable statute of limitations. In deciding whether or not the section 301 claim was timely made, the Court must look to Count 9, which claims that Local 705 breached its duty of fair representation in working under the collective bargaining agreements, because the running of the statute of limitations on section 301 claims is actually based on the timing of the union grievance process. *See Metz v. Tootsie Roll Industries, Inc.*, 715 F.2d 299, 301-02 (7th Cir. 1983) ("A suit by an employee against a union for breach of the duty of fair representation and an action against an employer under § 301 ... are inextricably interdependent" and therefore must be considered together as hybrid actions.).

UPS points out that the statute of limitations on a section 301/fair representation claim is only six months, and it begins to run at such time as the union, after being notified of the employee's grievance, fails or refuses to process the grievance. *Metz*, 715 F.2d at 301-02. In this case, plaintiffs began submitting grievances to Local 705 in 2002 but did not bring the section 301/fair representation claims until May 2004.

The statute of limitations is an affirmative defense in a section 301/fair representation case, as it is in other cases. *U.S. v. Northern Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004). It is

8

well settled that the possible existence of an affirmative defense does not mean that a complaint fails to state a claim. *Id.*, citing *Gomez v. Toledo*, 446 U.S. 635, 100 (1980). Thus the Court may dismiss a claim at this stage based on the statute of limitations only if, on the face of the complaint, "the plaintiff pleads too much and admits definitively that the applicable limitations period has expired." *Barry Aviation Incorporated v. Land O'Lakes Municipal Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004). The plaintiffs in this case have not done so. Plaintiffs allege that Local 705 constantly misled them by indicating that it was in fact taking action on their grievances and would eventually render a resolution, and that they believed their grievances were being processed until January 2004, when finally Local 705 admitted to Flemming that it had no intention of pursuing them. Am. Compl. ¶¶ 163-64, 173-74. Accepting the plaintiffs' allegations as true, as the Court must at this juncture, there is no basis to dismiss their section 301 claim.

## Conclusion

For the foregoing reasons, the Court grants UPS' motion to dismiss [docket no. 14] in part and denies it in part. Counts 4 through 7 are dismissed; the motion is otherwise denied. UPS is directed to answer the remaining claims within fourteen days of this order.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: October 12, 2004